UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


SABASTIAN PATRICK WILLIAMS,

       Plaintiff,

v.                                                                                          Case No. 2:09-cv-59
                                                                  HON. GORDON J. QUIST
JIM WALLIS, et al.,

       Defendants.
_____/


## REPORT AND RECOMMENDATION

       Plaintiff Sabastian Patrick Williams, an inmate currently confined at the Oaks Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for actions that took place at the Marquette Branch Prison. The only remaining claim is for retaliation against defendants Resident Unit Manager Ken Niemisto, Classification Program Coordinator Jim Wallis and Grievance Coordinator Mike Laitinen.

       Plaintiff was released from administrative segregation to the general population on March 27, 2008. Plaintiff asserts that prisoners Smith and Roseman were also released from administrative segregation into the general population. All three prisoners were supposed to receive job assignments in the kitchen. Prisoners Smith and Roseman immediately received a kitchen job assignment. Plaintiff was informed that he could not receive a job assignment because he had to wait 30 days upon release from administrative segregation before he was given an "institutional routine work assignment." Plaintiff was informed that this rule applies to all prisoners who are released from administrative segregation to general population. It is not contested that this rule did

not apply to prisoner Smith or prisoner Roseman. Plaintiff asserts that defendant Wallis informed plaintiff that prisoners Smith and Roseman were given special treatment as a "favor" to a corrections officer.

All three prisoners had been involved in the "Ojibway" riot. Defendants have asserted that plaintiff assaulted a corrections officer. Plaintiff does not deny this, but asserts that prisoners Smith and Roseman also assaulted a corrections officer.

After plaintiff filed a grievance on the requirement that he wait 30 days before being assigned to the kitchen, he was assigned to yard detail. Plaintiff was physically unable to work in yard detail. Plaintiff asserts that he was assigned to yard detail in retaliation for his grievance filings. Plaintiff asserts that he was informed by defendant Niemisto that plaintiff would be assigned a work detail one day, "but this is not how you go about it by filing bullshitting grievances." Plaintiff was informed that a work assignment was not appropriate for him due to security reasons. Plaintiff asserts that defendant Laitinen told him that he would not get a porter job because he continued to file grievances. Defendant Wallis allegedly told plaintiff to stop filing grievances if he wanted a good job assignment.

Defendants move for summary judgment asserting that plaintiff's past prisoner behavior prevented his assignment to the kitchen due to security concerns. Defendants move for qualified immunity and Eleventh Amendment immunity. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits,

depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts that he was assigned to the most undesirable yard crew job in retaliation for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial

or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff asserts that after he filed grievances on the refusal to give him a kitchen job before first waiting 30 days, he was given a less desirable yard crew position. Defendants assert that plaintiff was refused a kitchen assignment, in part because plaintiff was involved in the Ojibway riot and was directly involved in striking a corrections officer in the face, which caused injury. Defendants also claim that plaintiff's release from segregation required approval from the Regional Prison Administrator. Defendants have not explained why that latter statement is relevant to plaintiff's lawsuit.

Defendant Wallis explains that he screens each prisoner individually for job assignments. Prisoners Smith and Roseman, although involved in the Ojibway riot, did not engage in the same conduct as plaintiff in the riot. In addition, prisoners Smith and Roseman received recommendations from their housing unit supervisor. Plaintiff did not receive a similar recommendation. Defendant Niemisto believed that plaintiff could receive the supervision that he needed while working on the yard crew and that plaintiff needed to prove that he could work in an environment with less supervision. Further, defendants indicate that there are only 112 prison jobs available and there are approximately 500 prisoners. Defendants deny that they took retaliatory action against plaintiff.

In the opinion of the undersigned, there exists a question of fact regarding whether defendants took retaliatory action against plaintiff. Plaintiff has presented a different factual picture of what took place. Plaintiff alleges that he was released from administrative segregation with an

assignment to the kitchen along with two other prisoners. Those two prisoners were immediately assigned to the kitchen despite an apparent rule that prisoners must wait 30 days after release from administrative segregation before receiving their job assignment. It was only after plaintiff filed grievances that he was informed that he would not receive a kitchen assignment and that he was assigned to the yard crew. Plaintiff was allegedly informed by each defendant to stop filing grievances if he wanted a job placement in the kitchen, or a better job placement. Further, defendants have not explained how plaintiff was a security risk, and why plaintiff would have been released from administrative segregation with a classification for a work assignment in the kitchen if he was a security threat in that position. In the opinion of the undersigned, a question of fact exists regarding whether plaintiff's assignment to the yard crew was retaliatory.

Defendants move for dismissal under the Eleventh Amendment. To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). This court has already determined that a rule requiring "30 days of good behavior and positive work performance before receiving a specific job classification is wholly rational and reasonably related to the legitimate purpose of maintaining security in the prison." In the opinion of the undersigned, to the extent that plaintiff is requesting that the court find this rule in violation of the constitution, that claim should be dismissed.

Defendants move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity. In the opinion of the undersigned, a question of fact exists regarding whether plaintiff was retaliated against when he was refused a kitchen position and given a yard crew position. There exists a sufficient factual dispute to show that each defendant was involved in denying plaintiff a job opportunity and placing plaintiff in undesirable yard crew position after plaintiff filed grievances.

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #35) be granted in part, dismissing plaintiff's official capacity claims, but denied in part on plaintiff's individual capacity retaliation claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE

Dated: January 31, 2011